## Appeal of the Western National Bank.

1. A dividing wall between two buildings in the city of Philadelphia owned by different parties, the foundations of which rest partly upon the ground of each is a party-wall. It is immaterial that the foundation is not equally laid upon the lot of each party, and that the wall itself, above the foundation, is wholly within the lot of one of the adjoining owners.

2. In 1837, by agreement between the owners of adjoining lots, buildings were erected thereon, which, though distinct in the interior, appeared on the outside to be a single building. The dividing wall was 18 inches in thickness, and the whole of it, except 7¾ inches of the foundation at one end, and 2¾ inches of the foundation at the other end, rested upon the ground of one of the said owners. This foundation, and the lower portion of the wall resting thereon, supported the lateral thrust of a series of arches which supported the floors of both buildings. After changes of ownership of both lots, the owner of one lot removed the arches in his building and built on his ground an additional wall abutting on the division wall to resist the lateral pressure of the arches in the other building, and to give additional support to his own interior construction as altered. Subsequently the owner of the other building tore it down and erected a new and higher building, constructing on his ground a new wall abutting on the old division wall. He also, in building, encroached 6½ inches over the top of the old division wall, and the same distance in front of a certain portion of it which did not extend to the building line. The adjoining owner thereupon filed a bill in equity against him, averring that the division wall was not a party wall, and praying that the defendant be restrained from overlapping on top or in front thereof, or from otherwise using it as a party wall:

*Held*, that the wall was a party wall, and that the court below rightly dismissed the bill.

3. Deeds must be construed with reference to party-wall legislation, and the usual description by metes, courses and distances will not be held to defeat the grantor's right under the statute when he conveys a lot adjoining one which he continues to hold. To have the effect of depriving him of that right, the language of the deed must imply such intent.

January 19th and 22nd 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

Appeal from the Court of Common Pleas No.    , of *Philadelphia county :* In equity : Of July Term 1882, No. 166.

This was an appeal by the Western National Bank from a decree of said court, dismissing a bill in equity, filed by the bank against George Wood, trustee, praying for an injunction to restrain the defendant from using as a "party-wall" the eastern wall of the bank building, and other relief.

An answer was filed, and the cause was referred to an Examiner and Master (Wm. Wynne Wister, Jr. Esq.), from whose report the facts appeared to be as follows :—

The defendant, in 1881, pulled down a building owned by him (as trustee) situate at the southwest corner of Chestnut

and Fourth streets, in Philadelphia, the lot on which said building was erected containing in front on Chestnut street 64 feet, and bounded on the west by premises owned by the complainant, on which was erected its bank building. The defendant then proceeded to erect on his lot a large building, and in so doing began and threatened to use and encroach upon, and partly in front of the eastern wall of the complainant's bank building.

On August 23rd 1881, soon after defendant had begun to erect a western wall for his new building, of only 13 inches in thickness, abutting upon complainant's eastern wall, complainant notified him that the eastern wall of the bank building was not a party-wall, but was erected wholly on the bank's lot. The defendant however continued to erect his western wall, 13 inches in thickness, and on October 1st 1881, began to overlap the front of the bank building, above the first story, to the extent of $6\frac{1}{2}$ inches. Complainant then filed this bill, October 17th 1881, averring that defendant had no right to use said wall as a party-wall, or to enter on complainant's lot to construct a party-wall, or to overlap complainant's building. The answer asserted the defendant's right to use the wall as a party-wall.

The facts relating to the original construction of said wall, and the devolution of title to complainant and defendant of their respective lots, were as follows:—In 1837 the Philadelphia bank owned the lot of ground situate at the southwest corner of Chestnut and Fourth streets, having a front on Chestnut street of 64 feet; and the bank of the United States owned the adjoining lot on the west, having a front on Chestnut street of 46 feet 6 inches. In that year these two corporations joined in the erection on these lots of two several banking houses occupying the full front of both lots, and presenting in front the appearance of one building, though distinct in the interiors. The division wall between the buildings was a solid wall 18 inches thick, the whole of which (except a small part of the foundation, as hereinafter mentioned) was within the line of the United States bank property. Above the first story the front wall of both buildings receded 28 inches from the building line of Chestnut street. The base or lower portion of the front wall of the two buildings consisted of a series of arches, which supported that wall above the first story. One of these arches was sprung over the division line between the lots, one abutment thereof resting on the Philadelphia bank lot, the other on the United States bank lot, so that this arch supported at once the western portion of the front of one bank building, and the eastern portion of the front of the other bank building. The interior construction of the lowest story of these buildings consisted also of a system of arches mutually sup-

ported, latterly, by the division wall ; these arches supported the main floor. The joists of the Philadelphia bank building were let into and supported by said division wall ; this wall also suppported the roof of both buildings. There was no evidence of any agreement between the Philadelphia bank and the United States bank as to the character of the division wall.

Such being the condition of the buildings, the Philadelphia bank, on May 25th 1847, purchased from the United States bank its lot and building. The deed was made to Richard D. Wood, then a director of the Philadelphia bank, who took and held the legal title in trust for the Philadelphia bank, which thus became the owner of both said lots and buildings. The description in this deed was, inter alfa, as follows : " All that certain lot . . . with the marble edifice thereon erected, situate on the south side of Chestnut street . . . beginning at a point at the distance of 64 feet westward from the southwest corner of Chestnut and Fourth streets, and extending thence southward, partly by ground of the Philadelphia bank . . . on a line parallel with said Fourth street, 104 ft. 10 in. to a point, thence westward . . . . thence northward . . . to the south line of Chestnut street . . . thence eastward along the south line of Chestnut street, 46 feet 6 inches to the place of beginning."

On June 8th of the same year (1847) by deed of that date, executed by said Richard D. Wood, the Western Bank purchased from the Philadelphia Bank the said property lately owned by the United States Bank, the description in the deed being identical with that in the deed to the said Richard D. Wood, above recited. The title of the Western Bank became vested in the Western National Bank of Philadelphia.

In 1872, the Western National Bank altered the interior arrangement of its building, and built an additional brick wall inside and adjoining the division wall, 13 inches thick with iron beams built into it and bolted to the old wall ; this new wall rose from foundation to roof. As to the reason for building this wall, the Master reported : " The floors and arches being taken away, the division wall was not strong enough, as originally constructed, to sustain the thrust of the arches in the adjoining building." This double wall was 31 inches thick and, by reason of the iron beams built in, was much stronger than a single ordinary brick or stone wall of the same thickness would have been.

In 1881, the defendant contracted for the erection of a new building to cover his entire lot, six stories, or about 90 feet in height, in place of his own building which was only 44 feet high. The old building was torn down, and about the same time the Western National Bank made certain changes in front of their building, made necessary by removal of the front of

defendant's old building. The defendant's contractor under-
pinned the eastern wall of the Western Bank to the extent of
three feet ; then built a solid brick wall on his own lot, adjoin-
ing the old division wall, 13 inches in thickness, from the foun-
dation up, until it reached the roof af the Western Bank, then
carried it over the top of the division wall six and a half addi-
tional inches, and ran it up of the thickness of nineteen and a
half inches for a short distance, then narrowed it to seventeen
and a half inches, and finally, before reaching the roof, to thir-
teen inches. This front end of this wall started on the build-
ing line of Chestnut street, and after reaching the height of
the first story of the Western Bank (where the front wall of
the latter receded from the building line), it was carried over
the party line six and a half inches, and run up in front of that
much of the face of the bank's building until it reached the
roof, and there joined the wall above.

The Master found as a fact, that : " The division wall be-
tween the original buildings was a solid wall of eighteen inches
in thickness, the foundations of which rested seven and three
fourths inches at the north and two and three-fourths inches at
the south end, on the land of the Philadelphia Bank ; above, it
was within the line of the United States Bank's property."
This finding was based on testimony of the district surveyor,
and others, that after the erection by defendant of his new wes-
tern wall, two holes were cut into it, one at the north end, the
other at the south end, for the purpose of examining the foun-
dation of the old wall, when the latter was found, at those
points, to rest on defendant's lot, to the extent reported by the
Master.

The Master found, as matter of fact, that : " The western
wall of the Wood building, with the additional support it gains
from the division wall, is amply sufficient both in strength and
thickness for such a structure as the defendants have erected.
The division wall between the two buildings, as now constructed,
is not subject to any different or greater burden than it pre-
viously supported. It required the entire wall, together with
the addition built by the Western Bank when its internal ar-
rangements were altered, to bear the strain imposed by the old
building, of the Philadelphia Bank. The western wall of the
Wood building, if newly constructed of its present thickness,
and ten additional inches in the foundation, and six and a half
above, would be of sufficient strength and up to the require-
ments of the law ; but it would be inadequate if the existing
division wall was pared down to ten inches in the foundation
and six and a half above."

The Master's report, as to the law, was as follows :—

The next question to determine is, whether the dividing

wall is or is not a party-wall, and this is really the point in controversy. The wall was built by the adjoining owners of two distinct properties, and between separate buildings; for the circumstance that the front for architectural purposes presented the appearance of but one, is unimportant. It was erected partly on the land of each, the testimony showing that it rested on a foundation which, to the extent of at least seven inches in front and three in the rear, was on the property of the defendants. It also supported the joists of the defendants' building, which were let into it some seven inches, and sustained the roof of both, besides affording a mutual abutment for the arches hat formed the interior arrangement of the two.

That it thus presented all the characteristics of a party-wall, and was so used for a long series of years, cannot be disputed. Every circumstance strengthens the conviction that it was built and intended as such.

It seems, therefore, to clearly fall within the principle of the decision in Gordon v. Milne, 2 W. N. C. 513, and to be governed thereby. In Gordon v. Milne, the wall only rested three and a half inches on the land of one of the parties, but the court say : " The character of the wall must be determined in part from its foundation. If the builder starts the latter over the line, and thus takes the land of the adjoining owner, he must carry it up strictly as a party-wall, or at least in such a manner as to give the adjoining owner all the benefit of such a wall. Otherwise the land of the latter would be taken without any corresponding benefit."

In the present case the wall extends over the defendants' land more than seven inches, and it may well be doubted, in view of the above decision, even if the builder had never designed this as a party-wall, whether it would have availed to prevent it. An adjoining owner is not to be debarred of his privilege of a party wall by the mere fact that the builder chooses to recede at any distance above the foundation within his own line. The principle of party-wall legislation is repugnant to any such doctrine. Every one in the city of Philadelphia takes his land subject to the servitude of a party-wall, and to hold that the first builder, even when he builds strictly on the party line, can deprive the adjoining owner of his right to build against it, and to carry his wall over the top to the extent allowed by law, seems to the master subversive of the object of the statute. But the evidence in this case completely negatives the idea of there being any intention on the part of the builders to consider this other than a party-wall. It is far stronger than the case of Gordon v. Milne, 2 W. N. C. 513, as there was no attempt in that case to use it as such, and the argument relied on against it rested on the fact of there being

no ground for presuming that the wall had been constructed for the common benefit of both parties. Here, on the contrary, not only was there ground for such presumption, but it was clearly demonstrated that it was so constructed and so used. Both parties treated it as a party wall from its first erection to the present time, and the two buildings being once owned by the same person cannot vary the status of the present owners.

And, in the opinion of the Master, the principle invoked by complainants, that the lot and wall having been first conveyed to the Western National Bank by the defendants' predecessors in title, without reserving an easement therein, they and their grantees are estopped from asserting any right in derogation of the grant, does not apply.

The right to the use of a party-wall is a right reserved by statute, of which all persons are presumed to have knowledge, and which nothing less than an express relinquishment could bar; it is therefore essentially different from the case of a grantor asserting a right incompatible with the absolute enjoyment of his grant.

Moreover, where there is an existing user, the purchaser of the servient tenement takes with notice, and is bound thereby, although his grantor is the owner of the dominant tenement; this is the very principle decided in Kieffer *v.* Imhoff, 2 Casey 445. The exact point, however, seems to have been determined adversely to the complainants in Beaver *v.* Nutter, 10 Phila. 345; McGittigan *v.* Evans, 8 Phila. 264.

This might be thought conclusive of the question, but it was strenuously contended by the able and ingenious counsel of the complainants: That the Acts of 1721 and 1782, which were in force at the time the wall was built, only authorized the construction of a new wall upon vacant ground, in which case the foundations must be laid equally upon the land of the persons between whom such party-wall is to be made; that this was compulsory, and the present foundations not being equally on the ground of both, it was not a party-wall. And that the Acts of 1855 and 1857, by virtue of which the defendants have used the six and a half inches within the complainants' line are inapplicable, because the latter's title to maintain the wall up to the line had vested prior to those enactments, and any attempt on the part of the legislature to give another the right to build six and one-half inches thereon would be unconstitutional.

And further, that under the Act of 1857, where a party proposed to erect a new building, and there was a good and sufficient wall already existing on the line of the adjoining premises, his only course was to take it down and build a party-

wall at his own expense. This is not the Master's interpretation either of the scope or intention of party-wall legislation.

It is a wise and judicious regulation of what would otherwise be the cause of endless disputes, and in all thickly-built cities seems an absolute necessity. If, being in derogation of the common law, such legislation is not to be improperly extended, it certainly is not to be emasculated by undue strictness.

Because the Act of 1771 provides that the foundations shall be laid equally on the land of both parties, to hold there cannot be a party wall when this is not the case, seems literally to stick in the bark.

The provision clearly intended to fix the maximum of encroachment, and not to compel the wall to rest half on each owner's lot. It must be perfectly immaterial whether the inequality arose from a mistake of the surveyors, as in Godshall *v.* Mariam, 1 Binn. 352, or by the consent of the parties for reasons of their own; the fact is patent, that the wall was regarded as a party wall, and rested on the land of both. And it can be no greater infringement of the complainants' constitutional right, that the adjoining owner should have the power to encroach a certain distance on his wall than that he should to the like extent on his land.

Nor does it seem probable that the statute intended to prohibit the builder of a new structure from using a good and substantial wall already existing, but actually compels him to take it down regardless of its capability, and build anew. This would be imposing an unnecessary burden for no reason, and might seriously affect the enjoyment of the adjoining owner.

The statute indeed negatives by its very terms any such inference, for it provides " that it shall be the duty of the inspectors, upon the application of any one about to erect a new building, to examine the party or division walls on the adjoining lot, which shall have been erected prior thereto, and if deemed and adjudged by them to be insufficient and unfit for the purpose of the new building, then to have them removed or taken down,". thereby indicating in the plainest and most significant way, that it is only when the wall is insufficient and unfit that it is to be taken down, and if not taken down, the right to build on and against it seems indisputable.

Thus far the question considered has been solely in reference to the right to build on the division or party-wall above, but it is manifest that the right to overlap in front rests on precisely similar grounds, and therefore must be equally lawful.

If the views of the Master in regard to defendants' right are correct in the one case, they are unquestionably so in the other. The same principles are involved in both, and the con-

6 OUTERBRIDGE.—12

clusion must be the same. The defendants had an undoubted right to build up to the line of the street, and since the law nowhere defines the extent of a party-wall, but authorizes an adjoining owner to erect one on any part or throughout the whole line of his property, if the defendants would be justified in removing the wall already existing to the height of the first story, and erecting a new one, resting to the legal extent on the bank's lot in front, it follows from the opinion already expressed that they had a right to build in the manner they have. This may appear to be in conflict with the decision in Duncan *v.* Hanbest, 2 Brewster 362; but a careful consideration of that case has led the Master to the conclusion that unless there was some evidence of an understanding or agreement between the adjoining owners at the time the party-wall was first built, that it should always thereafter remain the same, the decision is opposed to the intent as well as the letter of the law.

If the mere fact that the first builder chooses to recede from the street line deprives the adjoining owner of the right to build on the unoccupied space in front, it is a qualification of the right secured to him by law for which the Act furnishes no authority, and it is easy to conceive of a case in which he might virtually be deprived of all benefit thereunder. There is, moreover, a distinction between the cases, for in Duncan *v.* Hanbest, both buildings receded from the street, with no wall in front, while in this, there was an existing party-wall to the height of the balcony, up to, and in advance of, the street line.

On the whole, while the Master may have some doubt as to the ground of the decision, he does not think that Duncan *v.* Hanbest is conclusive of the present case, but holds to the opinion that the defendants were guilty of no trespass in placing their wall the six and a half inches on the bank's property.

This renders it unnecessary to discuss the question of easement, which forms the third ground of defence, and it only remains to consider whether the complaints are entitled to relief under their alternative prayer for compensation. At the time the wall was erected, the right of the builder to compensation was a chose in action, a personal right which belonged to him in his individual capacity, and which did not pass by conveyance to his grantee. Even admitting, then, that the wall was not paid for when built, which there seems but little reason to doubt, considering the circumstances, it is perfectly clear that the complainants are not entitled to compensation now; any such claim, if it ever existed, has long since been barred by lapse of time, and if still valid, would belong to the first builder; and as it was clearly proved by the testimony of Mr. Crump that the defendants are not at present making any other or

greater use of the wall than heretofore, it follows that no compensation is due to complainants.

The master recommended a decree dismissing the bill.

Exceptions filed by the complainants to the Master's findings of fact and rulings of law were dismissed by the court (no opinion filed) and the Master's report was confirmed and a decree entered dismissing the bill at the cost of the complainant. The complainant thereupon took this appeal, and assigned for error the dismissal of its exceptions, and the decree dismissing the bill.

*C. Stuart Patterson*, for appellant.—The wall in controversy is altogether within appellant's property line, except the footing of the foundation, which projects at the front at the distance of twelve feet two inches below the footway seven and three-fourth inches over the line, and at the rear at the distance of eight feet seven inches below the footway where it projects two and three-fourth inches over the line. If the appellees have any right to that wall, or to its use, that right must be established either under party-wall legislation or as an easement by prescription, for it is not pretended that any such right has ever been expressly granted to the appellees. There is at common law no right to build a party wall over a neighbor's land : Barlow *v.* Norman, 2 W. Bl. 959. The right to build a party wall is either statutory or acquired as an easement, and is subjected to an easement adverse to its exercise : Wells *v.* Ody, 1 M. & W. 452 ; Titterton *v.* Conyers, 5 Taunton 465 ; Crofts *v.* Haldane, L. R., 2 Q. B. 194 ; Weston *v.* Arnold, 8 L. R. Ch. App. 1084.

The object of party-wall legislation is " the regulation of party-walls so as to secure the largest inner front to dwellings." Equality and mutuality of burdens and benefits is, therefore, the essential principle of the system. The Act of 1721 authorizes the regulation of party-walls whose " foundation shall be laid equally upon the lands of persons between whom such party-wall is to be made." The Act of 1782 directs the regulators to make a record. As ALLISON, P. J., said in Beaver *v.* Nutter, 10 Phila. 346, a wall made wholly upon the land of one party " could in no proper sense be regarded as a party-wall." This wall must therefore have been placed by agreement where it stands. As HARE, P. J., said in Doyle *v.* Ritter, 6 Phila. 577, " There is no room for the operation of statutes which were only meant to apply where . . . it would be a trespass to erect a party-wall without an authority in law." There is no proof that the regulators ever did regulate the party-wall and it is not to be assumed: 1st. That there was a record; 2d. That there was extrinsic notice to the appellant; and 3d. That the regulators disobeyed the statute and did not place the wall

equally upon the lands of the two parties. In Godshall *v.* Mariam, 1 Binn. 342, it was proven that a regulation had been in fact made.    Milne's Appeal, 2 W. N. C. 513 is not in point, for Milne had entered upon his neighbor's land and appropriated part of it as a foundation for his party-wall and the wall complained of was built upon that foundation, and was in continuation of that which was admitted a party-wall.  Even if the wall had been originally a party-wall the appellant's deed from the appellee's predecessor in their title which conveyed the wall to appellant prevents appellee from claiming the wall: United States *v.* Appleton, 1 Sumner 500 ; Clark *v.* Cogge, Cro. Jac. 170 ; Pinnington *v.* Galland, 9 Exch. 1.    The cases of Pyer *v.* Carter, 1 H. & N. 916 ; Richards *v.* Rose, 9 Exch. 218 are overruled by Suffield *v.* Brown, 10 Jur. N. S. 111, and by Crossley *v.* Lightowler, L. R. 2 Ch. App. 478, and are inconsistent with White *v.* Bass, 7 H. & N. 722 ; Kieffer *v.* Imhoff, 2 Casey 438 ; Maynard *v.* Esher, 5 Har. 222 ; Oat *v.* Middleton, 2 Miles 248 ; Norris *v.* Adams, 2 Miles 337 ; Doyle *v.* Ritter, 6 Phila. 577, and Butterworth *v.* Crawford, 46 New York, 349.  As HARE, P. J., said in Doyle *v.* Ritter, the grantee takes title to the wall, but grantor has by implied reservation an easement, that is, " a right to require that the wall shall not be removed to the injury of the building."  The appellee's user must be the measure of their right : Martin *v.* Goble, 1 Camp. 320 ; Goddard on Easements, p. 188 ; Crossley *v.* Lightowler, supra; Lanfranchi *v.* Mackenzie, L. R. 4 Eq. 421 ; Murchie *v.* Black, 19 C. B. N. S. 190 ; Price *v.* McConnell, 27 Ill. 255 ; Partridge *v.* Gilbert, 15 N. Y. 601 ; Sherred *v.* Cisco, 4 Sandf. 480 ; Eno *v.* Del Vecchio, 4 Duer, 53 ; 6 Id. 17 ; Turnpike Co. *v.* Piper, 1 W. N. C. 237 ; L. & C. Turnpike Co.'s Appeal, 30 P. F. S. 427.

The extent of the easement and the servitude to which it has subjected appellant's property now prevents appellees from asserting a right to enforce party-wall legislation as against the appellant, but under that legislation the appellees cannot appropriate an existing wall, for the Act of 20th May 1857 authorizes the use of a wall as it stands but not an addition to it, because it provides that where a party-wall is insufficient and unfit for the purpose of a new building, that wall must be removed and taken down by the last builder at his own expense in order to make way for the erection of a new party-wall, which shall impose an equal burden on the two properties.  The appellees' easement in the old wall will not justify their building on top of it, nor their overlapping its front : Duncan *v.* Hanbest, 2 Brewster 362 ; Ogden *v.* Jones, 2 Bosworth 685 ; Maxwell *v.* East River Bank, 3 Id. 124 ; Church *v.* Keech, 5 Id. 691 ; Nash *v.* Kemp, 12 Hun 592.

The appellees are now using the appellant's wall to an amount largely in excess of the statutory limit of ten inches in the foundation and six and a half inches above. Bailey's Appeal, 1 W. N. C. 350, does not decide that such use can lawfully be made, but does decide that if the owner of the wall permits the use he can compel the using party to pay for such increased use. The appellant is entitled to compensation for the appellees' use of the wall, and on that ground alone the appellant is entitled to a decree, for the Act of 1721 requires compensation to be made before "the next builder shall any ways use or break into the said wall :" and this right will be enforced by injunction : Cox v. Willetts, 2 Am. L. J. 327 ; Sutcliff v. Isaacs, 1 Pars. 494.

*A. Sydney Biddle*, for the appellees.—The eighteen-inch dividing wall was a party-wall when it was built in 1837, under the then existing legislation, to wit, the Act of February 24th 1721, which in the third section defines a party-wall to be a "wall to be built between party and party." The succeeding provision in the Act that the "foundation shall be equally laid upon the lands of the persons between whom such party-wall is to be made" is directory merely, and it has been decided that a mistake in the equal laying of the foundation does not change the character of the wall as a party-wall : Godshall v. Mariam, 1 Binney 356 ; Milne's Appeal, 2 W. N. C. 513. The Act of 1721 is silent as to the position of any portion of the wall except the foundation. The position of the foundation therefore determines the character of the entire wall. The thickness of the wall is wholly immaterial. There is no new statutory definition of a party-wall since the Act of 1721. The Act of 1782, 2 Sm. L. 48, was passed to render effectual the prior Act of 1721. The Act of 1855 did not change the character of party-walls. Nor did the conveyance by the Philadelphia Bank to the Western Bank change its character : Kiefer v. Imhoff, 2 Casey 442 ; Act of April 10th 1849, § 4, P. L. 600 ; McGittigan v. Evans, 28 Leg. Intell. 196. Even if the wall were not built as a party-wall, yet being built up to the line, we are entitled to encroach above or in front of it or to use it to the extent of six and a half inches, every such wall being built by the owner subject to the future servitude of being turned into a party-wall to the extent allowed by the Act of 1855.

If not a party-wall, there is a prescriptive easement of support. This easement was recognized by the Western Bank in 1872, when they took down their arches and built an additional thirteen-inch wall, to resist the lateral and downward pressure of the old Wood building. The lateral thrust of the new building is less than that caused by the arches of the old Wood

building.   The perpendicular easement of the old Wood build-
ing was the support of a roof; the perpendicular easement of
the new Wood building is merely the support for a small dis-
tance of a wall six and a half inches thick.   The use of the wall
as a support for the new Wood building is therefore less than it
was for the old Wood building, and as no support has been with-
drawn from the Western Bank building, but on the contrary
additional support given by the new wall built by the Woods
on their lot, thirteen inches in thickness, no injury has been done
to the appellees, and the court below rightly held that they
were not entitled to the equitable relief prayed for.

Mr. Justice TRUNKEY delivered the opinion of the court,
April 16th 1883.

The elaborate and able argument for the appellant and an
examination of the testimony have failed to convince us of any
error in the finding of the material facts, or in the considerate
opinion of the Master.   His reasoning upon the controlling
points vindicates the decree.

That the foundations of the solid division wall of eighteen
inches in thickness erected by the owners of the lots, " rested
seven and three-quarter inches at the north and two and three-
quarter inches at the south end, on the land of the Philadelphia
Bank," is a fact which the Master was warranted in finding; we
think it would have been error had he not found it.   That wall
was built in 1837, by the Bank of the United States and the
Philadelphia Bank, it supported the arches in each building and
the roofs of both, and the joists of the Philadelphia Bank buil-
ding were let into it six or seven inches.   The buildings were
distinct, but their fronts appeared as one continuous structure.
There is no evidence to repel the natural inference from the
acts of the parties that they intended it for a party-wall.   It
has been so used ever since.

When the appellants improved their building they strength-
ened the old division wall.   The appellees tore down their build-
ing and built larger and also strengthened said wall by adding
to its thickness.   In the changes of ownership and changes
made by improvements, the right to its enjoyment as a party-
wall, for more than forty years, was not denied by the owners
on either side.

The Philadelphia Bank owned both lots and buildings for a
period of fourteen days.   It purchased the lot and building of
the Bank of the United States on May 25th 1847, and on June
8th of the same year, conveyed the same to the Western Bank
of Philadelphia.   The appellants urge that the grantors in the
latter conveyance, or those holding under them, cannot assert a
claim that the wall is a party-wall in derogation from the deed.

This would be so if the deed contained any clause devesting the grantor's rights under the statutes relating to party-walls.

The Act of February 24th 1721, clothed the surveyors or regulators with power " to set out the foundations and regulate the walls to be built between party and party, as to breadth or thickness thereof; which foundation shall be laid equally upon the lands of the persons between whom such party-wall is to be made; and the first builders shall be reimbursed one moiety of the charge of such party-wall, or for so much thereof as the next builder shall have occasion to make use of," before he shall use the same. The Act of May 7th 1855, limits the extent that the party-wall may be placed on the adjoining lot by the next builder. This fixes the maximum of incumbrance on a lot for a party-wall against the owner's will.

Every owner of a lot of ground in Philadelphia has a statutory right to make a party-wall between himself and his neighbor, and may enter upon the adjoining lot for that purpose, not going beyond the prescribed limit. This right cannot be taken from him by the adjoining owner building exclusively upon his own land, either to the line, or a short distance therefrom. The first builder is he who first elects to make a party-wall and his right cannot be defeated by the act of another : Monroe v. Conroy, 1 Phil. 441; Morris v. Balderston, 2 Brew. 459. Prior to the Act of 1855, the extent of the encroachment was determined by the regulators. In Godshall v. Mariam, 1 Binn. 352, it was said : " There is great reason why the decision of the regulators unappealed from, should be conclusive as to the building, because if it were not, the walls which were built under the authority of the officers, whom the party was obliged to employ, might be afterwards pulled down. This would be a grievance too ruinous to be submitted to, and cannot be intended to be the meaning of the law." This would apply to the thickness of the wall as well as to the location with reference to the line.

An owner cannot encroach upon the adjoining lot save for the construction of a party-wall. Each lot being alike servient to the other for that purpose, when the first builder lays the foundation over the line it is presumed that he does so in the exercise of his right. Though he may bring the wall above the basement within the line of his lot, he is bound to use it as if built according to the statute. It matters not that the foundation covers less of the adjoining lot than is allowed by law : he shall not build so as to deprive the adjoining owner of his privilege : Milne's Appeal, 2 W. N. C. 513.

Under the Act of 1721 it was the duty of the regulators to set the foundation equally on each lot. Their action unappealed from was final. A mistake would not have changed the character of the wall, though much more of it was on one lot than

[Christian's Appeal.]

the other. By mutual agreement the parties could have set the foundation themselves and jointly have built the wall. Had they made a mistake as to the location of the line their respective rights would have been the same as if the foundation had been set by the regulators. The acts of parties owning adjoining lots, relate to the law securing a mutual advantage in a party-wall, and are to be considered in that relation as well as in the light of the general rule that he who owns the soil owns up to the sky. What would be the rights of either owner if the foundation were mistakenly placed by the regulators, or by act of the owners, so far from the line as to leave room to build a party-wall on the line, is a question not arising in this case.

The statute was enacted at an early day in the building of the city, and has proved a just and beneficial rule for owners of adjoining lots. Deeds ought to be interpreted subject to its provisions, and the usual description by metes, courses and distances, will not be held to defeat the grantor's right under the statute when he conveys a lot adjoining one which he continues to hold. To have the effect of depriving him of that right the language of the deed must imply such intent. The rule enters into the titles of adjoining lots, unless otherwise expressed.

The Master has so well disposed of the several points raised by the assignments of error, that it could be little more than a repeating of what he has said to remark them seriatim.

Decree affirmed, and appeal dismissed at the costs of the appellants.