# Mamie Wolpert *v.* William R. Marshall and Fannie A. Marshall, His Wife, Appellants.

*Real estate—Contract of sale—Breach—Case for jury.*

In an action for breach of contract for the sale of real estate, it appeared that the agreement provided that the title should be such as would be insured by any reputable title insurance company. On the date of the settlement, certain possible defects in the title were discovered by the title company, and it was agreed that information relative thereto would be furnished on the following day. At that time the plaintiff did not appear and the company pursued its investigations no further.

Under such circumstances, in a claim by the plaintiff to recover money paid down, the case was for the jury, and it was error to hold as a matter of law that the defendants had not performed their part of the contract. There was sufficient evidence, from which the jury could find that the settlement was never completed, because the plaintiff failed or declined to go on with it.

Argued November 21, 1924. Appeal, No. 244, Oct. T., 1924, by defendants, from judgment of C. P. No. 5, Phila. Co., June T., 1923, No. 3096, on verdict for plaintiff in

the case of Mamie Wolpert v. William R. Marshall and Fannie A. Marshall his wife. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit to recover money paid under agreement for the sale of real estate. Before HENRY, P. J. 52d Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

The court directed a verdict in favor of the plaintiff in the sum of $520 and judgment thereon. Defendants appealed.

*Error assigned* was, among others, in directing a verdict for the plaintiff.

*Francis G. Gallager,* for appellant.

*Benjamin Sork,* of *Blumberg & Sork,* for appellee.

OPINION BY LINN, J., February 27, 1925:

Plaintiff sued to get back down-money paid in a real estate transaction. The defense was that plaintiff failed to settle. The court held that defendant had not tendered a title insurable as agreed upon and directed a verdict for plaintiff. We think the evidence should have been submitted to the jury.

The contract was dated March 9, 1923, and provided: "The premises [in Philadelphia] are to be conveyed clear of all incumbrances and easements......The title is to be such as will be insured by any reputable title insurance company." The price was $11,000; $500 was paid on account, to be retained by vendor as liquidated damages if vendee defaulted; performance was to take place "within 90 days from date......said time to be the essence of this agreement, unless extended by mutual consent in writing endorsed hereon."

Plaintiff applied to the Commonwealth Title Insurance and Trust Company for title insurance and settlement was arranged for June 7, 1923, at 3 p. m. at that company's establishment.

At the trial, plaintiff's theory was that she could rescind because defendant had not tendered a title which the company would insure; defendant insisted that the settlement had never reached the stage where the company refused to insure, but that, on the contrary, the company adjourned the settlement for the purpose of satisfying itself of the accuracy of defendant's explanations of the questions raised by the company on the settlement certificate; that plaintiff's attorney and her agent acquiesced in the adjournment but then failed to proceed with the settlement; that a reputable title company had shortly before insured the premises clear.

The record shows that the parties by parol changed their written agreement; when it was signed the premises were subject to the lien of a $5,000 mortgage which plaintiff concedes they later agreed should remain, notwithstanding the original agreement that the premises should be conveyed clear. When the parties met at the settlement department of the title company at 3 p. m., June 7th, plaintiff was not present, but was represented by her lawyer, and her agent who had negotiated the purchase on her behalf. Defendant and his wife were present, and there executed and acknowledged a deed for the premises in form satisfactory to plaintiff's representatives and delivered it—as part of the settlement—to the title company's settlement clerk attending to the transaction. That deed was retained by the company.

The settlement certificate was in the form familiar in Philadelphia. The title company's settlement clerk testified that the "settlement was not completed" because he did not have sufficient information about three of the objections specified on the certificate: 1, as to Hunter's curtesy; 2, an underdrainage right; 3, the use of an alley. These "objections" were described by the title

company's assistant title officer as "questions" concerning which the company desired information which, if adequate, would result in their removal from the certificate. Defendant testified that when the settlement had progressed to the stage when consideration of these questions was reached, "it was after four o'clock, and [his representative] said that we would get that [the information desired by the clerk] over to the Land Title Building because it was insured there, and we would bring this here and clean it all up, and [the settlement clerk] said 'Well, we can't give you any time to-morrow,' that was on a Friday, 'but if you come Saturday morning at nine o'clock, we will fix it up!'" He continued that he and his representative returned on Saturday with the desired information, and proof that the Land Title and Trust Company had insured the premises clear of those objections within six months. Another witness, defendant's representative at the settlement, testified that when these objections were reached, the settlement clerk suggested that she, representing defendant, get "a letter of indemnity from the title company who had previously insured them and return on Saturday morning and settle it, complete the settlement," as it was then too late to get the letter that day. She also states she procured such a letter on Friday and telephoned counsel for plaintiff she had it and would produce it on Saturday. At the hour fixed by the settlement clerk for the continuation of the settlement, defendant and his representative appeared; no one appeared for plaintiff; and nothing more was done toward completing the settlement. A sidelight on the situation at that time appears in the following, taken from the record: Plaintiff's attorney objected to a question asking a witness whether after plaintiff failed to attend the settlement meeting so arranged, plaintiff was given "an opportunity to take the property if they wanted it," saying in support of his objection, "the agreement had expired, we were not bound to take it." To that, defendant's attorney replied, "Well, do you

admit it was open to you, and we held it open for your option?" Plaintiff's attorney answered: "Well, we all tried to sell it."

There is evidence that plaintiff's representatives on June 7th, acquiesced in the settlement clerk's suggestion to complete the settlement on Saturday morning. The company did not refuse to insure in accordance with plaintiff's application; apparently, it never finished its investigation, because plaintiff did not appear.

On such a record it was error to hold as matter of law that defendant had not performed; there is evidence from which the jury may find that the settlement was never completed because plaintiff failed or declined to go on with it after her representatives had consented to the arrangement to complete the settlement on Saturday though more than 90 days after the date of the contract. That arrangement appears to have been necessary for the title company to complete its investigation on plaintiff's behalf and is not in violation of the agreement specifying the time for settlement and making time of the essence of the contract. It, with the acquiescence of plaintiff's agents at the time, is sufficient, if believed by the jury, to constitute a waiver of the strict performance originally agreed to: Welsh v. Dick, 236 Pa. 155, 160. If therefore, plaintiff so refused or failed to complete performance, that is a bar to her demand in this case: Sanders v. Brock, 230 Pa. 609, 614.

On the proposition that the title was such that title insurance within the terms of their agreement would be issued on proper investigation by the title company, we also consider relevant the fact that the Land Title and Trust Company—admitted by the parties to be a reputable title insurance company—had insured this title clear of the objections in question within six months before, the objections all having arisen before that time.

Judgment reversed, and new trial awarded.