## Groskin v. Knight et al.

*Vendor and vendee — Executory agreement to convey clear of encumbrances—Good and insurable title.*

1. A mortgage on property at the time of the settlement is not an encumbrance although noted on the certificate as an objection, if the vendor is ready and willing to leave all the purchase money with the title company for the purpose of having the mortgage satisfied, and so informs the vendee.

2. Where the executory agreement specifically provides that the sale is made subject to existing leases and there is conflicting testimony as to whether vendee knew of the lease of the basement of the house to be conveyed at the time the agreement was executed, the question whether or not he had such knowledge and whether the lease of the basement is to be regarded as one of the existing leases under the above clause in the executory agreement, is for the jury, and a verdict in favor of defendant in an action by the vendee for the deposit money will not be disturbed.

3. A coal vault extending under the sidewalk appurtenant to the premises to be conveyed under the executory agreement is not an encumbrance within the covenant to convey clear of encumbrances.

4. Where the sale was made by house number and not by metes and bounds, objections regarding the party-wall, even though founded in fact, are not valid objections, such as will excuse the vendee from performing his contract.

5. Where the vendee, a few days before settlement, requests the title company having the matter in charge to note certain objections on its certificate, it becomes his duty, if the objections are placed on the certificate, to give notice to the vendor, so as to enable the latter to have them removed; if he does not give such notice, the vendee should be held to assume the risk that it may be later shown that there is nothing to the objections; if such is not shown to be the fact until after settlement by reason of the failure by the vendee to give reasonable notice of objections, the vendee should not be permitted to claim a default.

6. While true that a custom relied upon to establish a defence must be set up in the pleadings, the principle does not apply where the defence set up in the affidavit of defence is that the objections on the certificate either did not exist or were not encumbrances or valid objections to the title, and to explain their position and their reason for not removing the objections, defendants may introduce in evidence a local custom by which the vendee of real estate on applying for title insurance subsequently receives from the title company two certificates, one of which, in accordance with the custom, it becomes his duty to send to the vendor, and that the vendee in the instant case had failed to send the copy of the certificate to the vendor or to notify him in any way of the objections of the title company until the settlement.

7. Where the vendor, in an action against him by the vendee to recover the deposit money, has established to the satisfaction of the jury that the objections on the settlement certificate were not valid and that, had he been given reasonable notice thereof, he could have proved such to be the fact on or before the time of settlement, he is not in default, and the vendee, in rejecting the deed tendered, failed to carry out his contract and forfeits the deposit money.

Rule for new trial and motion for judgment *n. o. v.*  C. P. No. 2, Phila. Co., Sept. T., 1923, No. 2813.

*Daniel C. Donoghue,* for plaintiff; *Owen J. Roberts,* for defendants.

LEWIS, J., Nov. 4, 1926.—This case raises some interesting questions concerning the respective duties of a purchaser and seller of real estate in the *interim* between the date of the contract of sale and settlement, particularly when the latter has agreed to convey a good, clear and insurable title. The purchaser has sued to recover the hand-money paid at the execution of the agreement of purchase and sale, asserting that the sellers, at the time fixed for settlement, failed to carry out their contract to convey "clear of encumbrance with title good and insurable at regular rates by any leading title company." The trial ended in a verdict for the defendants, and we are now

concerned with the usual motions for judgment *non obstante veredicto* and for a new trial.

The agreement between plaintiff and defendants was entered into on March 23, 1923; it provided for the sale and purchase of "all that certain lot, with the buildings and improvements thereon erected, and situate and known as No. 1609 Chestnut Street, Philadelphia, Pa.," for the price of $240,000, settlement to be made "on or before Sept. 22, 1923." The deposit of $10,000 was to be retained by the sellers as liquidated damages in case of default on the purchaser's part.

The plaintiff, through his agents, applied to the Real Estate Title Insurance and Trust Company on May 22, 1923, for title insurance; a settlement certificate was issued under date of May 24, 1923. This certificate contained two of the "objections" later relied on by plaintiff as showing a default by defendants: (1) A coal vault under the Chestnut Street sidewalk, and (2) a mortgage of $70,000 in favor of the Girard Trust Company.

Early in September, 1923, the plaintiff, through his agents, Messrs. Edelstein and Bernstein, called the attention of the title company to the fact that there appeared to be additional objections, so far as the west party-wall was concerned, and, as a result, the title company on Sept. 11th wrote to the agents, saying that "there has been added to a copy of the settlement certificate the following: Girders carrying rear wall extend over party-line on the [west]. Payment for use of west party-wall to be paid to equitable owner. West wall on the front does not appear to be a party-wall, as the old building of 1611 had a separate party-wall and the roof rafters of new building 1611 extend 4½ inches past the [west] party-wall line of 1609, and of which you wish us to take notice, we desire to say that we have no means of confirming the alleged facts without an official survey of the premises in question. In the meantime, we will consider that the facts are correct and note them on our copy of the settlement certificate. We return herewith the copy left with us yesterday." According to the testimony, nothing further was done by the plaintiff or defendants until four o'clock in the afternoon of Sept. 21, 1923, which was the day before the last day fixed for settlement in the agreement of sale. Then, for the first time, a copy of the settlement certificate and a deed was sent by plaintiff to the defendant's attorney, together with a notice that settlement was set for eleven o'clock on the day following, Sept. 22nd, at the office of the title company. On that day, which was a Saturday, the parties and their counsel met at the place designated. As to what then occurred, the testimony of plaintiff and defendants differs materially, but settlement was not consummated. The plaintiff's attorney called upon the title company to remove the objections; this the settlement clerk declined to do, whereupon the plaintiff took the position, which he has ever since maintained, that the defendants were in default.

The issue is simple as counsel for the plaintiff states it. He says that "the only issue in this case is whether the vendors, at the time they tendered the deed to the vendee, were delivering to the vendee a title insurable by a leading title company clear of encumbrances." It will be noted that in thus stating the question involved, the plaintiff's counsel rests his case entirely on the insurability of the title; that is, the plaintiff agreed that we were not to be concerned with the actual conditions with reference to the old party-wall, unless they operated to make the title uninsurable as clear of encumbrances. Plaintiff's argument is that a negative answer must be given to the question presented, since it is not denied that the objections mentioned above appeared on the settlement certificate and that the settlement clerk

Groskin v. Knight et al.

refused to remove them or to insure the title except subject to them. Is this conclusive of the question? Particularly is it conclusive, in the light of the testimony brought out at the trial, that had the true facts been known, had a survey been furnished, the title company would have removed the objections and insured the title without the exceptions objected to by plaintiff.

Before considering the objections to which the controversy is really directed, there are three other matters that arise from the facts and which can be disposed of in a few words. The mortgage of $70,000 was not paid off prior to the settlement, but the defendants testified that they were ready and willing, and so informed the plaintiff, to leave with the title company all of the purchase money for the purpose of having the mortgage satisfied. It was testified that this is quite customary at settlements, and that the title company would have issued its title policy under those circumstances.

Secondly, there was some discussion as to one of the leases subject to which the premises were to be conveyed. Whereas, the agreement of sale recited the lease was of the first floor, it appeared that it covered the basement as well. The plaintiff testified that he had no knowledge of this prior to the date fixed for settlement; the defendants, on the other hand, produced testimony that the plaintiff had not only personally examined all of the leases before the agreement of sale was signed, but had made certain remarks showing he understood the lease included the basement. The question became one for the jury, and it was submitted to them. In addition, the contract specifically provided that "this sale is made subject to the *existing leases*," of which that in question was one.

The third matter had to do with the coal vault under the sidewalk. We ruled at the trial that this was not an encumbrance on or an objection to the title, and thus left nothing to the jury to be decided regarding it. We do not understand that the plaintiff now finds fault with the ruling. The vault existed fifty years ago, when defendants bought the property: See Memmert *v.* McKeen, 112 Pa. 315, and Patterson *v.* Arthurs, 9 Watts, 152. If the City of Philadelphia decided to build a subway under Chestnut Street, it could compel the owner of premises No. 1609 to fill up the excavation, but that fact did not constitute the vault an objection or encumbrance: Gilham *v.* Real Estate Title Ins. and Trust Co., 203 Pa. 24; Perkinpine *v.* Hogan, 47 Pa. Superior Ct. 22.

We come now to the chief objections relied upon by plaintiff as establishing a default by the defendants, and which he raised not only at the time of settlement, but at the trial and now in these motions, namely, that the girders carrying the rear wall of No. 1609 Chestnut Street extended over the party-line on the west, and that the roof rafters of the new building at No. 1611 Chestnut Street extended 4½ inches past the west party-wall line of No. 1609 Chestnut Street. The objections as thus noted on the back of the certificate were not in accordance with the physical condition, in that there is a misuse of the terms "party-line" and "west party-wall line." Between the properties Nos. 1609 and 1611 Chestnut Street there was an old party-wall, irregular in line, although substantially 13 inches in width throughout. At the front, this party-wall was located 8½ inches on No. 1609 and 4½ inches on No. 1611, while in the rear the wall was 7½ inches on No. 1609 and 5½ inches on No. 1611. There was no evidence as to when this wall had been erected, but apparently it had existed on the property for a time long in the past. As we have heretofore pointed out, the contract of purchase and sale described what was to be bought and sold as "all that certain lot, with the buildings and improvements thereon erected, and situate and known as 1609

Groskin v. Knight et al.

Chestnut Street, Philadelphia, Pa." Hence, the purchaser undertook to buy not only land, but buildings as already erected, the whole being the particular unit situate and known as No. 1609 Chestnut Street. Necessarily, the building to be bought had enclosing walls, both on the east and the west, and it is reasonable to assume that the purchaser was aware that one or both of these walls were party-walls, and that these party-walls, however located, were subject to the usual rights of adjoining owners as to the mutual use thereof. At the trial, the defendants produced evidence of the official survey, showing the party-line between Nos. 1609 and 1611 Chestnut Street, which survey had been made on Dec. 16, 1921. It appeared that the party-wall was not centered on that line either at the front or at the back of that line, but that the wall extended at the front a distance of 12 inches over on to No. 1611 Chestnut Street and at the rear a distance of 5½ inches. It appeared that when the building at No. 1611 Chestnut Street was being erected, the builders, in obtaining support for the girders and joists, did not go through the centre of the party-wall of No. 1609 Chestnut Street at any time, and that they made use of the party-wall to an extent only sufficient to give them a legal bearing of 4½ inches. An officer of the title company testified that if the facts had been developed at the time of settlement to show that these girders and joists did not extend beyond the middle of the party-wall, the exception would have been taken off the title certificate and that the title company would have insured the title.

In the view we have taken of this case, it is important to keep in mind that the objections were not placed on the settlement certificate at the instance of the title company, but were noted thereon at the request of the plaintiff's agents, the title company stating at the time that it had no means of confirming the alleged facts without an official survey of the premises. A representative of the title company did inspect the premises a few days later, but such an inspection would not have revealed the true facts as to the construction of the buildings; the alleged easements were not visible.

There are two principal difficulties with the position now assumed by the plaintiff. In the first place, it is contended on behalf of the defendants, and we agree therewith, that since the sale was by house number and not by metes and bounds, the objections regarding the party-wall, even if founded in fact, were not valid objections such as excused plaintiff from performing his contract: See Medara v. Du Bois, 187 Pa. 431; Western National Bank's Appeal, 102 Pa. 171; Solomon v. Loy, 82 Pa. Superior Ct. 99; Dunlap v. Reardon, 24 Pa. Superior Ct. 35. Instead of being encumbrances or objections, they were more in the nature of, as stated in Wolpert v. Marshall, 84 Pa. Superior Ct. 597, " 'questions' concerning which the company desired information which, if adequate, would result in their removal from the certificate." Secondly, the testimony is, and the jury has accepted it, that the title company would have at once removed the objections and would have insured the title in a policy which would not have excepted the objections had the company been presented with information as to the true conditions of the party-line and party-wall. In fact, therefore, the objections noted on the settlement certificate were not valid objections, in so far as the insurability of the title was involved. The answer of the plaintiff is, as stated before, that the provision in the contract that the title would be such as would be insured by a leading title insurance company made such a company the supreme arbiter, and that when it refused at settlement to remove certain objections from its settlement certificate, that act was conclusive on the parties as to the validity of the objections, and a showing subsequently that the objections were not

Groskin v. Knight et al.

valid is immaterial. He contends, further, that, under the terms of his application for title insurance, he was bound to give the company notice of any possible defects in the title of which he became aware. This is true, as is also the general proposition that it is the duty of the seller to remove objections to the title before the purchaser is bound to take a deed. The question, however, really comes down to this: Are the defendants in default because they did not have the supposed objections removed at or before settlement? If they are not in default on this ground, they are not in default at all, for, in the light of the testimony and the jury's verdict, the deed tendered by defendants would have conveyed a title clear of encumbrances and insurable by a leading title company. All that was necessary to have the objections removed was to give the facts—through experts and an official survey. Under the circumstances of this case, have the vendors breached their contract by not producing or having produced the necessary information *on the date fixed for settlement?* It is our opinion that, where a purchaser of property a few days before settlement requests the title company to note certain objections on its settlement certificate, he should, if the objections are placed on the certificate, give notice to the vendor so as to enable the latter to have them removed. If he does not give such notice, the purchaser should be held to assume the risk that it may be later shown there is nothing to the objections; if such is not shown to be the fact until after settlement, by reason of failure by the purchaser to give reasonable notice of the objections, the purchaser should not be permitted to claim a default.

At the trial, evidence was offered to prove that it is customary in Philadelphia for a purchaser of real estate to apply for title insurance and for the title company to send two certificates to the applicant, who then supplies one of them to the seller. The plaintiff objected to the introduction of this testimony on the ground that the custom had not been specifically pleaded in the affidavit of defence. It is true that a custom relied upon to establish a defence must be set up in the pleadings, but it is clear that the custom here was not relied on as a defence. The defence was, as stated in the affidavit, that the objections on the certificate either did not exist or were not encumbrances or valid objections to the title. Having established this defence, the defendants went further in order to explain why they had not shown some of those facts at the settlement. Their reason for this was that they had not been given notice of the objections. Under the circumstances of this particular case, we think they were entitled to receive notice that the objections had been placed on the certificate. We left it to the jury to say whether the defendants had been given such reasonable notice, and whether, if reasonable notice had been given, the defendants could have had the objections removed. We see no error in this under the facts as they were developed at the trial.

If any other view were taken, it would follow that a purchaser of real estate could, a few days before the time fixed for settlement, have objections, even though fanciful, placed on the certificate, and then, because of the seller's inability to have them removed before settlement on account of the lack of time, claim a default and be entitled to a return of his deposit. Purchasers regretting their contract or finding themselves unable to fulfill its terms—and there are many such—would find this a most convenient rule. It was quite evident at the trial in the instant case—although we do not think that the objections were placed on the settlement certificate by the plaintiff's agents merely to defeat settlement—that the plaintiff was looking, rather eagerly, for some good reason why, without being in default himself, the settlement should not be consummated.

The defendants, having established to the satisfaction of the jury that the objections in the settlement certificate were not valid, and, further, that, had they been given reasonable notice, they could have proved such to be the fact at or before the time for settlement, are not in default, and the plaintiff, in rejecting the deed tendered by them, failed to carry out his contract; under its terms, he has forfeited the $10,000 involved in this suit.

Because of the circumstances under which the objections were placed on the settlement certificate, coupled with the fact that they were not in fact valid, the situation here is not controlled, as plaintiff argues, by Baker v. Kaplan, 282 Pa. 239. We are not convinced that the only issue here should have been the identical one determined in that case.

And now, Nov. 4, 1926, the motions for judgment *n. o. v.* and for a new trial are overruled.