Edward K. Medara, Appellant, *v.* William L. Du Bois.

187        431
f  24 SC    36
   24 SC [1]  37

*Party wall—Boundaries—Monuments on ground—Deed—Description.*

A party wall is a permanent monument which fixes the location of a boundary line within the meaning of the well-established rule, that monuments on the ground must prevail over measurements.

In an action to recover the purchase money of real estate, it appeared that plaintiff agreed in writing to sell to defendant the premises "known as 3816, Locust street," and recited as being twenty-five feet wide. Over twenty-one years before the date of the agreement the owner of the land in question owned the adjoining lot to the west, and built thereon twin houses. The middle of the party wall of these houses was six inches west of the middle line of the two lots. The owner sold the eastern lot, which subsequently became vested in plaintiff. The deed tendered by him to defendant for the eastern lot conformed to the agreement. The defendant contended that the fair intendment of the agreement was that it should include one half the party wall, and denied that plaintiff's deed to the eastern lot carried his title further than the middle line between two lots. *Held,* (1) that plaintiff had a good and marketable title to the middle of the party wall, and that the deed tendered was sufficient to convey the same to defendant.

Argued Jan. 27, 1898. Appeal, No. 384, Jan. T., 1897, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Dec. T.,

1896, No. 1200, on case decided by the court without a jury. Before Sterrett, C. J., Williams, McCollum, Mitchell and Fell, JJ. Reversed.

Assumpsit to recover the purchase money of real estate.

The opinion of the trial court by Brégy, J., was as follows:

This was tried before me without a jury, and I find the following to be the facts:

On the twentieth day of May, 1896, the plaintiff, Edward K. Medara, and the defendant, William L. Du Bois, entered into an agreement, in writing, whereby the plaintiff agreed to sell, and the defendant agreed to purchase " All that certain lot or piece of ground with the messuage or tenement thereon erected, situate on the south side of Locust street, west of Thirty-eighth street, in the twenty-seventh ward of the city of Philadelphia, containing in front or breadth on said Locust street twenty-five feet, and extending of that width-in length or depth southward 175 feet to Irving street, known as 3816 Locust street, for the sum of $9,000, to be paid in cash at time of settlement, which was to be made on or before June 19, 1896, possession to be given with deed at the time of settlement—taxes and water-rent for the current year to be computed and settled between the parties to the date of settlement."

It is further stipulated in said agreement as follows : " The title is to be good and marketable and the deed for the premises is to be made at the expense of the purchaser and delivered to him duly executed and acknowledged by the proper parties on or before the nineteenth day of June, 1896."

Upon the execution of this agreement the plaintiff delivered to the defendant, or his conveyancer, his title papers for premises 3816 Locust street, among which was a deed dated March 29, 1894, recorded at Philadelphia, in deed book T. G. No. 393, page 373, etc., from Edwin C. Nevin, to plaintiff. In this deed said Nevin conveyed to plaintiff, " All that certain lot or piece of ground with the messuage or tenement thereon erected, situate on the south side of Locust street at the distance of 175 feet eastward from the east side of Thirty-ninth street, in the twenty-seventh ward of the city of Philadelphia; containing in front or breadth on the said Locust street twenty-five feet; and

extending of that width in length or depth southward, between parallel lines at right angles with said Locust street, 175 feet to Irving street."

Plaintiff also delivered to the defendant the keys of said premises and he, the defendant, immediately placed his bill "for rent" on the same.

The conveyancer on the receipt of the papers had a survey made of the premises 3816 Locust street, which disclosed the fact that the middle of the west wall of same was located three and three fourths inches west of a line commencing 175 feet east of Thirty-ninth street, at the front of the building and at the back of the middle of said wall, was five and one half inches west of said line.

The defendant thereupon refused to take title to the premises and the plaintiff thereupon, on June 22, 1896, tendered to the defendant a deed for the premises describing the same as described in the deed from Edwin C. Nevin, to him duly executed and acknowledged by plaintiff, and the defendant refusing to accept the same and make settlement, plaintiff brought this suit to recover the amount of the purchase money stipulated in the agreement.

The premises 3816 Locust street, is the easternmost of two houses and lots, which were built together some time in the year 1874, and on April 18, 1874, were conveyed by William Elliott, high sheriff of the county of Philadelphia, to John W. Everman.

In the deed made by the sheriff the premises are described separately as two unfinished two-story messuages and lots and Mansard roofs situate on the south side of Locust street at the respective distances of 150 feet and 175 feet east of Thirty-ninth street, each being twenty-five feet front on Locust street and in depth 175 feet to Irving street.

On March 18, 1875, John W. Everman and wife conveyed the easternmost of said properties (at the distance of 175 feet east of Thirty-ninth street and being the premises in question) to William Thompson, and on October 23, 1875, said Everman and wife conveyed the westernmost of said properties (at the distance of 150 feet east of Thirty-ninth street) to William Howell, junior, in fee.

The title to the easternmost of said properties (being the

premises in question in this suit) subsequently became vested in Edward K. Medara by a deed from Edwin C. Nevin to him, dated March 29, 1894; the title to the westernmost of said properties still remains in the said William Howell, junior; the division wall between the said houses was finished and completed in April, 1874, and remains now as it was then.

It also appears that the defendant made an application to the Land Title and Trust Company for an insurance of the title to the premises agreed to be conveyed to him by said Edward K. Medara, but desired the insurance to be of the title by the description shown on the survey; this the company declined to do, but expressed their willingness to insure the title to 3816 Locust street by the description in Mr. Medara's deed, without exception or reservation and without an extra charge.

All of the conveyances from William Elliott, sheriff, down to the plaintiff, described the premises as having the messuage erected on the lot in question.

It appeared from the survey procured by defendant that the lot, the deed for which was tendered to the defendant, contained as a matter of fact twenty-five feet six inches front by 175 feet deep to Irving street.

The sum of $100 was paid by defendant on account of the purchase money mentioned in the agreement of sale and this suit was brought to recover the balance of same—$8,900—and also the sum of $89.98, said last mentioned sum being the proportion of taxes and water rent assessed against the premises in question from June 19, 1896.

The plaintiff asks for a verdict therefor for $8,989.98. Interest from June 19, 1896 to date of verdict.

#### FINDINGS OF LAW.

1. By the agreement of sale of May 20, 1896, the plaintiff undertook to convey to the defendant a house No. 3816 Locust street. The fair intendment of the agreement is that it should include one half of the party wall on the west side of the premises, and as the deed tendered by the plaintiff proposed to convey premises the description of which as stated in the deed is shown by the survey to include less than one half of the said party wall, such deed is not a fulfilment of the plaintiff's agreement, and the plaintiff cannot recover.

2. By the agreement of sale the plaintiff undertook to convey a house No. 3816 Locust street; the plaintiff shows title to a lot of ground on the south side of Locust street, at the distance of 175 feet east of Thirty-ninth street, containing in front on Locust street twenty-five feet and extending in depth southward 175 feet, which lot he undertook to convey to the defendant by the deed dated June 18, 1896, which he tendered to the defendant in fulfilment of the agreement of sale; but as it appears that the house which he undertook to sell to the defendant was not built entirely upon the premises conveyed by the deed, but that a portion of the wall of said house was outside said premises so undertaken to be conveyed and located upon premises belonging to another, the plaintiff does not appear to have a marketable title to the property embraced in his agreement of sale of May 20, 1896, and therefore he cannot recover in this action.

3. The title the plaintiff claimed to have acquired by use of the western strip of land three and three quarter inches in front by five and one half inches in the rear, is not such a title as the defendant was bound to accept, not having the elements of certainty and indubitability the defendant was entitled to require under the contract to furnish a good and marketable title.

I, therefore, render a verdict for the defendant.

*Error assigned* was the judgment of the court.

*William Kelley,* with him *John M. Ridings,* for appellant.— For more than twenty-one years before the date of the agreement of sale, which fact was found by the learned court, and which also appears by the record, the wall of plaintiff's house projected over the adjoining lot to the west, and this projection was apparent and continuous. His title was therefore complete by lapse of time.

The courses and distances in a deed always give way to the boundaries found on the ground or supplied by the proof of their former existence: Lodge v. Barnett, 46 Pa. 477; Smith v. Moore, 5 Rawle, 348; Dunn v. Ralyea, 6 W. & S. 475; Grace Methodist Episcopal Church v. Dobbins, 153 Pa. 294; Geible v. Smith, 146 Pa. 276; Phillips v. Phillips, 48 Pa. 178; Spaulding v. Ferguson, 158 Pa. 219.

*R. L. Ashhurst,* with him *Rowland Evans,* for appellee.—It is well settled that the determination of the fact of an acquisition of title by adverse user or possession for twenty-one years, whether of land or an incorporeal incident to its possession, is one exclusively within the province of the jury: Mason v. Ammon, 117 Pa. 127.

A title is not marketable where it exposes the party holding it to litigation: Ludwick v. Huntzinger, 5 W. & S. 51; Murray v. Ellis, 112 Pa. 490; Herman v. Somers, 158 Pa. 428; Mitchell v. Steinmetz, 97 Pa. 251; Holmes v. Woods, 168 Pa. 530; Pratt v. Eby, 67 Pa. 396; Smith's App., 177 Pa. 437.

In a case closely resembling the present it was expressly decided by the Supreme Court of New York (Arnstein v. Burroughs, 27 N. Y. Supplement, 958) that where the wall of the building which the vendor had agreed to sell to the vendee encroached two inches on the adjoining lot, and the deed tendered did not undertake to convey this two inches, the title tendered was not a compliance with the agreement of sale.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 17, 1898:

This action of assumpsit was brought to recover the unpaid residue of purchase money for a " certain lot or piece of ground with the messuage or tenement thereon erected, situate on the south side of Locust street, west of Thirty-eighth street, in the Twenty-seventh ward of the city of Philadelphia, containing in front or breadth on said Locust street twenty-five feet, and extending of that width in length or depth southward one hundred and seventy-five feet to Irving street, known as No. 3816, Locust street," which by written agreement of May 20, 1896,—from which the foregoing description is quoted,—the plaintiff agreed to sell, and the defendant agreed to purchase for the consideration and on the terms set forth in said agreement.

The defense that was successfully interposed in the court below was, not that plaintiff's title to the lot "known as No. 3816, Locust street," described in the foregoing quotation from the agreement, was defective or unmarketable, but that the premises, as described in and conveyed by the deed tendered by plaintiff to defendant, are different from those described in said agreement, in this, that said deed does not include a narrow strip of land, three and three quarter inches wide in front, and

five and a half inches wide in the rear, on the west side, which plaintiff by said agreement undertook to convey, and which should therefore be included in the description contained in the deed.

By agreement filed trial by jury was waived and the decision of the case submitted in the court below. No exceptions having been filed to the learned trial judge's findings of fact, the question is one of law, viz: whether, upon the facts found, the title tendered to defendant is good and marketable? The deed tendered by plaintiff purports to convey, "All that certain lot or piece of ground with the messuage or tenement thereon erected, situate on the south side of Locust street at the distance of one hundred and seventy-five feet eastward from the east side of Thirty-ninth street . . . .; containing in front or breadth on said Locust street twenty-five feet, and extending, of that width, in length or depth southward, between parallel lines, at right angles with said Locust street, one hundred and seventy-five feet to Irving street. Being the same premises which Edwin C. Nevin, by indenture bearing date the 29th day of May, 1894, and recorded . . . . etc., granted and conveyed unto the said Edward K. Medara in fee."

It appeared from the survey procured by the defendant that the lot for which the deed aforesaid was tendered him by the plaintiff contained, as a matter of fact, twenty-five feet, six inches front, by 175 feet deep, to Irving street.

Early in 1874, the then owner of lots Nos. 3816 and 3818, Locust street, erected thereon a pair of dwelling houses connected together by an ordinary division or party wall. In April, 1874, John W. Everman became the owner in fee of these contiguous houses and lots by purchase at sheriff's sale. In the sheriff's deed, the premises are described separately as " two unfinished two-story messuages and lots of ground, with Mansard roofs, situate on the south side of Locust street, at the respective distances of one hundred and fifty and one hundred and seventy-five feet east of Thirty-ninth street, each being twenty-five feet front on Locust street, and in depth one hundred and seventy-five feet to Irving street."

The title to both houses and lots thus concurrently acquired by Everman remained in him until March 18, 1875, when he conveyed in fee to William Thompson the eastern house and lot,

describing the same as beginning 175 feet east of Thirty-ninth street, etc., and on October 23, 1875, he conveyed in fee the other house and lot to William Howell, Jr., in whom the title still remains.

The division or party wall between the two houses was finished and completed in April, 1874, and remains now as it was then. The center of said wall was and is, of course, the dividing line between the two houses. In other words, the eastern half of said wall belonged to and formed part of the house or messuage erected on the eastern lot, and the western half, in like manner, formed part of the house erected on the western lot. The division or party wall was and continues to be practically an artificial monument on the ground, the center of which, longitudinally, is virtually the westerly line of the one property and the easterly line of the other; so, that when Everman conveyed the eastern house and lot to Thompson, the latter thereby acquired title to that line as the westerly line of his purchase. In like manner when Howell afterwards purchased the western house and lot he acquired exclusive title to nothing east of that line, but only to the adjoining house and lot west of said line. This necessarily follows from a proper application of the well-established rule that monuments on the ground must prevail over measurements.

Speaking of the "party wall," in Warfel v. Knott, 128 Pa. 528, this Court said it was "a permanent monument which fixed the location of the south line, and the north line was just twenty-two feet from [the middle of the party wall] and parallel with it." In Lodge v. Barnett, 46 Pa. 477, Mr. Chief Justice AGNEW said: "The courses and distances in a deed always give way to the boundaries found on the ground, or supplied by proof of their former existence, when the marks or monuments are gone. So the return of a survey, even though official, must give way to the location on the ground, while the patent, the final grant of the state, may be corrected by the return of survey, and if it also differs, both may be rectified by the work on the ground. . . . If titles were to depend upon the fluctuations of the compass, or errors of the chain or rod pole, upon measurements of angles or of distances, instead of the lines, monuments and marks upon the ground, it would open the door to a flood of litigation." Nothing is better settled

than the law of this state on this subject, and our books are full of cases illustrating its application to the varying facts of each.

In his first conclusion of law the learned trial judge found that, " By the agreement of sale of May 20, 1896, the plaintiff undertook to convey to the defendant a house, No. 3816, Locust street. The fair intendment of the agreement is that it should include one half of the party wall in the west side of the premises." Thus far he was undoubtedly correct; but, when he proceeded to ignore the fact that the party wall is a monument on the ground, and gave controlling effect to the line as shown by the survey alone, he was just as clearly wrong, and the result was that his first conclusion of law, as a whole, is clearly erroneous. Substantially, the same error underlies the second conclusion of law. On the contrary, he should have held that the owner and builder of the twin houses designed to be occupied as separate dwellings, having located and constructed the dividing wall between them as he did, must be held to have intended the same for a party wall, and the center line thereof extended longitudinally from street to street, to be the dividing line between the two properties; and that the first vendee of Everman, the purchaser at the sheriff's sale, acquired a title in fee to one half of said wall and the house and lot east of said line. In principle, at least, this would have been in harmony with the decision of this Court in Western Nat. Bank's Appeal, 102 Pa. 171, 182.

If the former owner, in improving the two lots, had been careful to locate the center line of the party wall between the two houses, on what now appears by the survey to be the line between the two lots, no question of discrepancy or interference would probably have arisen. But when the twin houses were being erected he owned both lots, and the houses happened to be so located that the center line of the party wall appears to be a few inches west of the line between the two lots, as shown by the survey. By the sheriff's sale in 1874, both lots, with the buildings thereon erected, passed concurrently to Everman, who, while thus invested with the title to both houses and lots, conveyed the eastern property to William Thompson by a deed which, properly construed, conveyed the whole of the eastern house and lot, located east of the center line of said party wall,

extended from street to street.   By that conveyance said line was adopted as the dividing line between the two lots and the improvements thereon, in lieu of a line located solely by the distance and angles shown on the survey; and, so far as appears, that adopted line has continued to be the true and correct dividing line between said properties ever since.

The deed that was tendered to the defendant substantially conforms in tenor and effect to the other conveyances in the chain of title from the sheriff to Everman, and from the latter, through the mesne conveyances, to the plaintiff, and is quite sufficient to convey in fee to the defendant the whole of the eastern "messuage" or house from the western boundary thereof, at the center line of the party wall, and the land upon which said house stands, together with the residue of the lot on the easterly side of said center line extended northerly to Locust street and southerly to Irving street.   In other words, the deed is quite sufficient to vest in the defendant a good and marketable title to said eastern house and lot known as No. 3816, Locust street; being the same property that was conveyed by Everman to Thompson, and lying east of the center of said party wall, extended aforesaid.

Without further elaboration, it follows from what has been said that the judgment of the court below cannot be affirmed. It is accordingly reversed, and judgment is now entered in favor of the plaintiff and against the defendant for $8,989.98, the amount found by the court below, with interest from June 19, 1896, upon the payment of which the plaintiff shall deliver to the defendant the deed tendered to the latter.