# Hutchison et al. *v.* Little Four Oil & Gas Co. et al., Appellants.
# Hutchison et al. *v.* Chisler, Appellant.

*Deed—Boundaries—Stream — Monuments — Courses, distances, etc.*

1. Courses, distances and quantity of land specified in a deed must always give way to the natural objects and other monuments named therein.

2. Where in a deed a stream is designated as a boundary, its meanders should be followed, even though a straight line is also given; the latter should be treated as simply indicating the general course of the stream.

*Deed—Possession—Retention of possession—Adverse possession —Statute of limitations—Vendor and vendee—Division line— Heirs—Fence.*

3. A grantor has a duty to deliver possession, as well as to convey the land specified in his deed, and hence a mere retention of possession, without more, will not justify the conclusion that he holds adversely to his grantee.

4. This rule does not apply, however, as between the heirs and devisees of a grantor and grantee. If those of the former continue in adverse possession for more than twenty-one years after the decease of their ancestor, a valid title accrues to them under the statute of limitations.

5. The statute of limitations makes no exception in favor of a vendee, and hence, where the heirs of a vendor maintain a fence around the disputed tract for over twenty-one years, a title by adverse possession accrues to them, and it is not material whether or not the fence is on the line prescribed by the deed.

6. Ordinarily if, after sale of a portion of a property, a division line is maintained between the part sold and that retained, for a period of more than twenty-one years, and each party saw or could have seen the adverse possession of the other, the line thus established will be considered the division line between the properties.

7. A possession of such a character as owners of similar land in the vicinity usually maintain regarding their property, is sufficient to found a title upon, if it is inconsistent with the possession or right of possession of one claiming to be the owner.

*Appeals—Evidence—Charge — Excerpt — Exceptions — Assignments of error.*

8. If it is clear from the charge of the court, taken as a whole, that the jury could not have misunderstood the questions to be decided, the mere fact that extracts, assigned as error, would have been erroneous, if standing alone, will not require a reversal of the judgment.

9. An assignment of error relating to evidence must have an exception to support it, or it will not be considered.

Argued October 2, 1922. Appeals, Nos. 6 and 7, Oct. T., 1922, by defendants, from judgment of C. P. Greene Co., Sept. T., 1919, No. 63, on verdict for plaintiffs, in case of J. B. Hutchison et al. v. Little Four Oil & Gas Co. et al. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Ejectment for land in Springhill Township. Before RAY, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned,* inter alia, were various rulings and instructions, appearing by opinion of Supreme Court, quoting record.

*John C. Bane,* with him *B. N. Freeland* and *Marion H. Murphy,* for appellants.—The instructions as to possession were erroneous: Kern v. Howell, 180 Pa. 315; Pierce v. Barney, 209 Pa. 132; Hads v. Tiernan, 213 Pa. 44; Connor v. Bell, 152 Pa. 444; Hawk v. Senseman, 6 S. & R. 21; DeHaven v. Landell, 31 Pa. 120; Hole v. Rittenhouse, 25 Pa. 491.

Plaintiffs failed to sustain their averments of the existence of a fence: Olwine v. Holman, 23 Pa. 279.

Plaintiffs cannot sustain, and cannot in any material degree support, their averment of adverse possession, by their evidence in relation to the alleged fence, the alleged farming, the alleged payment of taxes, the alleged picnics, or the construction of the alleged oil and gas lines: McMinn v. Cummings, 56 Pa. Superior Ct. 77; Union Canal Co. v. Young, 1 Wharton 410; James v. Bream, 263 Pa. 305; Sallada v. Mock, 271 Pa. 212.

*Walter C. Montgomery,* with him *Thomas S. Crago, James J. Purman* and *Thomas H. Shannon,* for appellees.—The courses and distances in a deed always give way to the boundaries found on the ground, or by proof of their former existence, when the marks or monuments are known: Lodge v. Barnett, 46 Pa. 477.

A title may be acquired by adverse possession, even though the person holding such adverse possession enter on the premises in question, as a mere trespasser, without either title, right, or color of title: Hads v. Tiernan, 213 Pa. 44; Milnes v. Van Gilder, 197 Pa. 347; Pipher v. Lodge, 4 S. & R. 310; Walker v. Walker, 16 S. & R. 379; Moore v. Luce, 29 Pa. 260.

A line established on a parol conveyance will be supported, and it is not affected by the statute of frauds: McVey v. Durkin, 136 Pa. 418; Reiter v. McJunkin, 173 Pa. 82; Chew v. Morton, 10 Watts 321.

There was no error in charge on question of possession: Llewellyn v. Buechley, 198 Pa. 642; Thompson v.

Milford, 7 Watts 422; Royer v. Benlow, 10 S. & R. 303;
Wolf v. Ament, 1 Grant 150.


OPINION BY MR. JUSTICE SIMPSON, January 3, 1923:

These two appeals are by different defendants, from
the same judgment in an action of ejectment, one taken
by an alleged owner of the property and the other by
tenants under him; a single opinion will suffice for both.

James W. Hutchison, being the owner of a tract of
land, entered into an agreement with Cynthia Roach to
convey to her a portion of it; she paid a small amount
of down money and agreed to pay the balance of the
purchase price when she received an expected pension
from the government. She immediately entered into pos-
session of what plaintiffs allege is all the land she was
entitled to receive, improved it and lived on it until her
death. Four or five years after the purchase, she paid
the balance of the consideration and, on September 9,
1897, received a deed from Mr. Hutchison. No new
agreement was then entered into, and no change made in
the division line between the property she bought and
that which he retained; indeed no dispute, in regard to
this, arose between them, either then or thereafter.
Speaking generally, the two acres, the subject of this
ejectment, lie south of Fish Creek, hereinafter referred
to. After the foregoing conveyance, the grantor con-
tinued in possession of them and of the rest of his farm,
until his death on December 1, 1893, as did his heirs and
their lessees thereafter until the Spring of 1919, when
certain of the defendants tore down the fences and took
possession.

Two questions were raised at the trial: (1) Did the
description of the land in the deed to Mrs. Roach in-
clude the two acres? (2) If it did, were plaintiffs never-
theless entitled to recover, because they had held actual,
adverse, continued, visible, notorious, distinct and hos-
tile possession of it for more than twenty-one years?
Defendants alleged and plaintiffs denied the tract in

dispute was included within the conveyance; curiously enough, each claimed to have obtained a title by adverse possession (though defendants offered no evidence on this point); and each submitted, inter alia, a point for binding instructions. The court refused both points and left both of the above questions to the jury, which rendered a general verdict for plaintiffs. If they were right upon either point the judgment was correct; hence it is much to be regretted that the court below did not also require a specific answer to each question.

The deed from James W. Hutchison to Cynthia Roach describes the land as being "in Springhill Township, Greene County, Pa., lying on the waters of Fish Creek, bounded and described as follows: Beginning at the creek with Edward Ferguson line North 4° West 127 poles, to a linn corner of Jasper Griffith; thence with said Griffith line South 88½° West 63 poles to a stake corner of J. W. Hutchison; thence with said Hutchison's line South 4° East 127 poles to a rock, at the creek, corner of said Hutchison; thence with creek North 88½° East 63 poles to the place of beginning, containing fifty acres, one rod, strict measure." It is clear from the underscored words above, that Fish Creek was intended to be the southern limit of the land conveyed; we need not determine, however, whether its middle line or its "edge" was to be the boundary, since this inquiry is not suggested in the statement of the questions involved or in the assignments of error.

At the trial, the testimony of defendants' surveyors showed that they did not begin their surveys "at the creek with Edward Ferguson line" as specified in the deed; neither of them was "governed by any monuments on the ground in making [his] survey," except a linn tree, which had no marks on it, and was probably too young to have been in existence at the time of the sale, though they assumed it to be an off-shoot of one that was; and each of them wholly ignored the "rock," at the "edge of the creek," and the line "with creek......to the place of beginning." They gave as their excuse for this, that

they "did not find any rock [they] could identify," in the line which they projected, though they found one, "at the corner of the Rogers lot," formerly the Cynthia Roach property, to which "at some time the creek had run close," and which had "some small marks [on it which they] could not identify as surveyor's marks." They admitted that, if they had shortened their East line, and "stopped at the edge of the creek" it would have been near the rock they had discovered; but did not explain why they gave no effect to this important fact, or why they ignored the creek, by far the most prominent natural object named in the grant, except to state that they were directed to so survey the property as to obtain the acreage specified in the deed, and hence, as the courses and distances stated therein would give approximately this amount, these were followed without any reference to the creek as a boundary.

On the other hand, the surveyor for plaintiff started his survey at the rock referred to in the deed (which he and witnesses for both parties found no difficulty in discovering, or in identifying the marks on it), and, with the creek as a boundary, ran the southern line along its meanderings, treating the words "thence with the creek" as controlling, rather than the general direction "North 88½° East." This was clearly correct: Klingensmith v. Ground, 5 Watts 458; Miles Land Co. v. Hudson Coal Co., 246 Pa. 11, 17. In the former case, after stating that, where a stream is given as a boundary, the line should pursue its meanders, the opinion continues: "if the words 'thence up the creek north,' do not call for the creek as a boundary, why was the creek mentioned at all? The argument on the other side is, that the course being also given, no more is necessary to close the survey. But if the course were sufficient to express the whole intent, we are unable to conjecture why a natural object should have been employed......It is evident that the word 'north' was intended to indicate, not the exact course of the line, but the general course of the stream."

We conclude, therefore, that Fish Creek was intended to be the southern line of the land conveyed to Cynthia Roach; and hence dismiss the two assignments of error (the only ones relating to this phase of the case) which in different forms complain that the court below erred in not giving binding instructions for defendants. The law is too well settled to be disturbed, even if we were inclined to do it, which we are not, that courses and distances and quantity must all give way to the natural objects and other monuments specified in a deed: Large v. Penn, 6 S. & R. 488; Lodge v. Barnett, 46 Pa. 477; Medara v. DuBois, 187 Pa. 431, 438.

Perhaps, in view of what has been said, the court below would not have been far wrong if it had given binding instructions for plaintiffs, at least so far as concerns the greater part of the land in dispute; though possibly there was just enough in the case to require the whole question to be submitted to the jury. Assuming this, our only other inquiry is: Were there such trial errors, if any, in regard to the question of adverse possession, as to compel us to reverse the judgment? We do not think there were.

There is but one assignment of error relates to the evidence; it has no exception to support it, and hence we do not consider it. There was ample evidence, too voluminous to be here quoted, from which, though disputed, a jury could find, as this one did, that the possession of defendants and their predecessors in title never extended south of Fish Creek, and that all the facts existed which, if the usual rule applies, were sufficient to enable plaintiffs to acquire, by adverse possession, a title to the land in dispute. Defendants claim, however, and this is the principal contention, that the usual rule does not apply, because the controversy here is between grantor and grantee.

It is unquestionably true that the mere retention of possession by a grantor, will not justify the conclusion that his holding is so adverse to the grantee as to give

the former a title to the land, if he continues in possession for more than twenty-one years after the grant; and so the trial judge distinctly told the jury. The reason for this is, that a vendor owes to his vendee a duty to deliver possession as well as to convey; and, hence, if he retains possesion, it must, in the absence of notice to the contrary, be subordinate to the implied trust in favor of his vendee. This question does not arise in the present case, however, for the evidence was sufficient to enable the jury to find an adverse possession of over twenty-one years, after the death of both grantor and grantee. The former's heirs owed no such duty to the latter's devisees and their successors in title, and hence the contention on this point wholly fails. As was said in Walker v. Walker, 16 S. & R. 379, 382 (where the vendee had paid for the land but had not received a deed, —a stronger situation than the present, for under such circumstances "the heirs must convey it, if their ancestors did not"), "if the vendor has died . . . . . . [and the heir who takes the property] after his father's death, has occupied it for thirty years, it would repeal our act of limitation, and overturn all its principles, which secure property and estates, to make such heirs liable to complete in its letter a contract which had been suffered to sleep so long."

The statute makes no exception in favor of a vendee (Milnes v. Van Gilder, 197 Pa. 347, 350) and hence where the heirs of the vendor, who owe no duty to the former, maintain a fence around the disputed tract for over twenty-one years (as there was evidence here they did), this is sufficient to establish adverse possession, and "it is not material to inquire whether the fence is on the right line or not": Reiter v. McJunkin, 173 Pa. 82, 85. If the possession proved is "inconsistent with the possession or right of possession by another" it is sufficient to found à title upon (Sheaffer v. Eakman, 56 Pa. 144, 153), provided it is of such a character (as here plaintiff's evidence shows it was), as owners of similar

land in the vicinity usually maintain regarding their own property (Criswell v. Altemus, 7 W. 565, 580; Wolf v. Ament, 1 Grant 150; Hole v. Rittenhouse, 25 Pa. 491, 494; 1 Ruling Case Law 694-5) ; that is, in case of a farm, by tilling, renting, fencing, etc., etc.

Moreover, the rule contended for has no application, for the further reason that where, as here, long before the deed was made, the parties by their conduct determined where the division line was; the purchaser entered into possession of the part which lay on her side of it; during her lifetime made no claim to the land in dispute, and after her decease, her devisees and their successors in title were equally silent for a period of more than twenty-one years, though she and they lived on the adjoining land which was purchased, and must have seen the possession and adverse use by the grantor and his heirs, exactly as if no conveyance of it had ever been contemplated; for therefrom a jury might well find the parties had established the division line between the property intended to be sold and that to be retained: Chew v. Morton, 10 W. 321; Hagey v. Detweiler, 35 Pa. 409. All the reasons applicable to the statute apply to such a case; death has closed the mouths of those who knew the facts, and the rule "that actions speak louder than words is sound law, as well as proverbial wisdom" (Graham v. Dempsey, 169 Pa. 460), is peculiarly appropriate.

What has been said renders unnecessary a detailed consideration of the assignments of error bearing on the question of adverse possession. If we assume that one or more of the extracts quoted from the charge would have been erroneous if standing alone, nevertheless, when they are taken in connection with the charge in its entirety, the jury could not possibly have misunderstood the question they were called upon to decide. To hold otherwise would give undue effect to detached sentences, as against the whole tenor of an able charge on the subject.

The judgment of the court below is affirmed.