Opinion bx
 

 Cunningham, J.,
 

 This case is a sequel to the ejectment case between the same parties, reported in 122 Pa. Superior Ct. 234, 186 A. 249, under the title of
 
 Golden et ux. v. Ross
 
 — one difference being that the parties are now reversed. The Goldens, who were the plaintiffs in the former case, are now the defendants, and Ross, the defendant in that case, is plaintiff here.
 

 The parties live in adjoining houses; fronting upon the north side of Aspen Street in the City of Pittsburgh and connected by a party wall. The premises of the Goldens (owned by entireties) are designated as No. 534 Aspen Street and the Ross property as No. 536 —the Golden house being the central unit, and the Ross the western one, of a block of three two-story dwelling houses.
 

 Stated in general terms, the question involved in the present (as well as in the former) case is where does the law, applicable to the facts developed by the testimony, place the dividing line between their lots which extend some 50 feet from the rear end of the party wall to a private alley, 100 feet north of and parallel with Aspen Street. The controversies between these adjoining property owners arose out of the discovery of the unfortunate circumstance that the party wall between their dwellings was not built at a true right angle with the front line of their lots along Aspen Street.
 

 In 1921, the Goldens owned both properties and by their deed, dated August 2d of that year, conveyed to Ross the property numbered 536. The material portion of the description in that deed is set forth in the former case at page 236. For present purposes it is sufficient to say that it describes the lot as having a frontage of 21 feet on Aspen Street, extending at right
 
 *419
 
 angles directly back and preserving the frontage width evenly throughout to the private alley. The description further specifies that on the lot thereby conveyed is a third of a two-story and mansard frame dwelling house.
 

 A few years after this conveyance, it was found, as the result of a survey, that the center line of the party wall and the deed line do not coincide. The deed line is perpendicular to Aspen Street and some six inches on the Ross side of the party wall line. Because, as above stated, the party wall is not at right angles with Aspen Street the two lines are not parallel, and the gap between them widens to about twenty-two inches as they reach the rear boundary. About 1925, Ross rebuilt the kitchen at the rear of his house, extending it laterally to the center of the party wall. Previously the rear extension had been entirely on his side of the deed line. In 1932, before any controversy had arisen, the Goldens erected a concrete wall and a fence extending from the reconstructed portion of the Ross house back to the alley, but along the deed line shown by the survey.
 

 With this condition existing, the Goldens brought the prior action in ejectment in 1933 against Ross, claiming that the reconstructed portion of his dwelling encroached upon their land. The ground then in dispute was the strip occupied by the addition, about 15% feet in length and varying in width from 7% to 15 inches. The trial court held that the description in the deed — “abutting 21 feet on......Aspen Street” — did not control, since'it did not carry the line of the lot thus conveyed by the Goldens to Ross to the center of the party wall, and accordingly entered a nonsuit against the Goldens. On their appeal, this court, in an opinion by Baldrige, J., affirmed the judgment of non-suit. In so doing, we held that the true boundary between the lots was the center line of the party wall. While we were there only concerned with the area in dispute, we indicated that this line, extended the entire length of the property, constituted the real boundary.
 
 *420
 
 Our decision was based principally upon the ruling of the Supreme Court in
 
 Medara v.
 
 DuBois, 187 Pa. 431, 41 A. 322.
 

 Less than a year after that decision, Ross brought the present action in ejectment against the Goldens for the remainder of the strip now occupied by them, — being the area bounded on one side by the deed line and on the other by the party wall line as extended. The wall and fence erected by the Goldens is within this area. The trial Judge, Rimer, P. J., specially presiding, directed a verdict for plaintiff. Defendants’ motions for judgment n.o.v., or a new trial, were denied by the court, in banc, and they now appeal from the judgment on the verdict.
 

 The court below held that the principle adopted by us in our previous decision was controlling. It ruled that the center line of the party wall, extended the entire length of the properties, is the true boundary, and rejected defendants’ contention that they were entitled to go to the jury upon the question of the existence of a consentable line.
 

 In reaching this conclusion, the court below did not treat our prior decision as
 
 res judicata
 
 of the present controversy, as defendants complain. On the contrary, it expressly recognized the inapplicability of that doctrine, since the subject matter of the present litigation was not included in the former case. It merely determined that the principle enunciated in our prior opinion, and supported by at least three earlier cases, was decisive of the present issue. Accurately speaking, it applied the doctrine of
 
 stare decisis.
 
 Therefore the pertinent question upon this appeal is whether the facts here presented require the application of the general principle that ordinarily the center of a party wall, extended the entire length of the lots between which it has been erected, is the true dividing line between those lots, though it varies from the line indicated in the description in the deed for one of them. The only other
 
 *421
 
 question requiring consideration is whether a
 
 prima facie
 
 case of a consentable line was made out by defendants.
 

 That party wall lines ordinarily are extended to the full depth of the lot appears to be the settled law in Pennsylvania. The leading case is
 
 Medara v. DuBois,
 
 supra. The facts are identical with the instant case in that there were row houses erected on a property, parts of which were later sold. A survey disclosed that the party wall did not correspond with the description in the deed, and also that the party wall was not perpendicular with the street, as is the fact in this case. The court stated (p. 439) :
 

 “...... the owner and builder of the twin houses designed to be occupied as separate dwellings, having located and constructed the dividing wall between them as he did, must be held to have intended the same for a party wall, and the center line thereof extended longitudinally from street to street, to be the dividing line between the two properties;......”
 

 To the same effect are
 
 Rook v. Greenewald, 22
 
 Pa. Superior Ct. 641, 648;
 
 Lodge v. Barnett,
 
 46 Pa. 477;
 
 Thompson v. DeLong,
 
 71 Pa. Superior Ct. 282, 286.
 

 The extent to which this doctrine has been carried is illustrated by the case of
 
 Hutchinson et al. v. Chisler et al.,
 
 275 Pa. 380, 119 A. 534. There, the deed called for a boundary “thence with creek,” but also specified a course and distance. The court held that the meanders of the creek constituted the true line, as opposed to the course given, stating that courses and distances specified in a deed must always give way to the natural objects and other monuments named therein.
 

 A minority of the members of this court are of opinion that the application of the rule announced by the Supreme Court in
 
 Medara v. DuBois,
 
 supra, results, for the reasons stated in the dissenting opinion herewith filed, in a grave injustice to the defendants in this case. The majority of us recognize the equity of the
 
 *422
 
 solution proposed by the minority, but feel that any modification of the rule should be made by the Supreme Court rather thán by us.
 

 The matter is of such importance that, in the judgment of all the members of the court, it is expedient that the question should be decided by the Supreme Court, and the case will be certified to that court for full consideration and decision, when this opinion and the dissenting opinion have been filed, in accordance with the provisions of section 10 of the Act of June 24, 1895, P. L. 212, 17 PS § 197.
 

 In the second place defendants relied upon the testimony of themselves and others to establish a consent-able line. This testimony was to the effect that a discussion had taken place between the husband-defendant and plaintiff after the forms for the concrete wall had been laid, but before the concrete had been poured. Defendant testified: “I had the forms for the concrete constructed but had not yet poured the concrete when Mr. Ross came on the scene, as he had done several times before, and I called his attention to the fact that I had to make my wall with an offset account of the steps in the back of his house coming over on my line and he said that, ‘Whether you are over on my ground or I am over on your ground a little bit, that does not make any difference.’ He says, ‘You and I are too old friends to talk about that.’ He says, ‘It is all right with me to let it go the way you have it.’ I said, ‘I know, but that offset makes my wall go crooked.’ He said, ‘Forget about it. That is nothing.’ ”
 

 The substance of this conversation was corroborated by his son and a laborer. His wife, while not within hearing distance, testified she had seen Ross talking with her husband. This evidence at most indicates ignorance and lack of interest as to whether either party encroached upon or used the property of the other. There is nothing from Avhich a jury might infer an intention to make the Avail a permanent boundary line
 
 *423
 
 in compromise of a dispute or uncertainty as to the real dividing line. This becomes doubly certain in the light of the fact that shortly thereafter the prior suit was instituted by the Goldens, indicating they never considered the crooked line marked by the addition to the Ross house and their wall as constituting, by agreement, the boundary line.
 

 One of the elements necessary to establish a consent-able line is an intention to settle permanently a dispute or uncertainty as to the boundary in question. The leading Pennsylvania case is that of
 
 Perkins v. Gay,
 
 3 S. & R. 327, in which Mr. Justice Gibson carefully enumerated the factors essential to constitute a binding agreement as to a boundary line. He stated (at p. 331)
 
 :
 
 “......if the parties, from misapprehension, adjust their fences, and exercise acts of ownership, in conformity with a line which turns out not to be the true boundary, or permission be ignorantly given to place a fence on the land of the party, this will not amount to an agreement, or be binding as the assent of the parties; and I agree it is a principle of equity, that the parties to an agreement must be acquainted with the extent of their rights and the nature of the information they can call for respecting them, else they will not be bound. -The reason is, that they proceed under an idea that the fact which is the inducement to the agreement, is in a particular way, and give their assent, not absolutely, but on conditions that are falsified by the event.
 
 Turner v. Turner,
 
 2 Ch. Rep. 81.
 
 Bingham v. Bingham,
 
 1 Vez, 126.
 
 Gee v. Spenser,
 
 1 Vern. 32.
 
 Pusey v. Desbouverie,
 
 3 P. Wms. 316.
 
 Lansdown v. Lansdown,
 
 Mosely, 364.
 
 Cocking v. Pratt,
 
 400. But where the parties treat upon the basis that the fact which is the subject of the agreement
 
 is doubtful,
 
 and the consequent risk each is to encounter is taken into consideration in the stipulations assented to, the contract will be valid notwithstanding any mistake of one of the parties, provided there be no concealment or un
 
 *424
 
 fair dealing by the opposite party, that would affect any other contract.
 
 Can v. Can,
 
 1 P. Wms. 726.
 
 Pullen v. Ready,
 
 1 Atk. 587.
 
 Jones v. Randall,
 
 Cowp. 37.”
 

 In
 
 Bolinger v. Barnhardt,
 
 64 Pa. Superior Ct. 243, we said at p. 253: “The mere permission to move the fence shows no unequivocal intention to establish a permanent boundary which should prevail whether it was the true boundary or not.”
 

 In the case at bar the evidence falls far short of that required to permit a jury to draw an inference of an intention to compromise a difficulty and establish a consentable line. See
 
 Grogan v. Leike, 22
 
 Pa. Superior Ct. 59, 62.
 

 The assignments of error are severally overruled.
 

 Judgment affirmed.